UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **NORDSON DEUTSCHLAND GmbH,** | ) CASE NO. 1:15 CV 905 |
| | ) |
| **Plaintiff,** | ) JUDGE DAN AARON POLSTER |
| | ) |
| vs. | ) **NUNC PRO TUNC**[1] |
| | ) **OPINION AND ORDER** |
| **THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,** | ) |
| | ) |
| **Defendant.** | ) |

This case is before the Court on Plaintiff's Partial Motion for Summary Judgment Regarding the Duty to Defend (**Doc #: 20**) and Defendant's Cross Motion for Summary Judgment (**Doc #: 22**). The issue is whether the insurance policies at issue obligate Defendant to pay the substantial legal costs Plaintiff has incurred in a French legal proceeding. Because the Court finds that there are disputed issues of material fact, both motions are **DENIED**.

**I.**

On May 7, 2015, Plaintiff Nordson Deutschland GmbH ("Nordson") filed a civil action against its insurer, The Insurance Company of the State of Pennsylvania ("the Insurance Company") for declaratory judgment and breach of contract. Nordson seeks a formal declaration that the Insurance Company is obligated to defend Nordson in connection with an expertise proceeding pending in the Court of Commerce of Chateauroux, France, and seeks the costs it has incurred to date in defending that proceeding.

---

[1] The Court issues this Opinion and Order *nunc pro tunc* due to a grammatical error on the bottom of page 3 of the Opinion and Order. (Doc #: 25.) This amendment does not impact the Court's ruling whatsoever.

The dispute in the expertise proceeding involves allegedly defective temperature sensors, for which Nordson supplied the soldering paste, and which were ultimately incorporated into automobiles sold by BMW and P.A. Peugeot Citron (Peugeot).  After the sensors failed, BMW and Peugeot sought recovery from their parts' supplier, Systemes Moteurs.  Systemes Moteurs compensated BMW and Peugeot, and then brought an expertise proceeding in the French commercial court seeking to recover those damages from its component parts manufacturers.  The component parts manufacturers, including Nordson, have been summoned as parties to the expertise proceeding.

Shortly after being summonsed, Nordson notified the Insurance Company of the expertise proceeding and sought defense coverage.  Six months later, the Insurance Company issued a reservation-of-rights letter to Nordson rejecting its request for defense coverage because the matter appeared to stem from recall damages that are excluded under the policies.  A year and a half later, the Insurance Company sent a revised reservation-of-rights letter to Nordson, declining to provide defense coverage because it concluded that the expertise proceeding is not a "suit seeking damages" under the subject policies.

Nordson thereafter brought this action pursuant to two general liability policies promising to defend Nordson against "suits" seeking property damage in countries around the world.  The policies provide, in relevant part, that the Insurance Company

> will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies.  We will have the right and duty to defend the insured against any suit seeking those damages.

The term "suit" is defined as

> a civil proceeding in which damages because of bodily injury, property damage or

> personal and advertising injury to which this insurance applies are alleged. Suit includes:
>
>> a. An arbitration proceeding in which such damages [are] claimed and to which the insured must submit or does submit with our consent; or
>>
>> b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

On August 7, 2015, Nordson filed the pending Motion, arguing that the expertise proceeding is a "suit seeking ... damages;" thus giving rise to the Insurance Company's duty to provide a defense. On November 4, 2015, the Insurance Company filed a Cross-Motion, arguing that the expertise proceeding is merely an investigatory proceeding, not a suit in which damages may be awarded; thus, it has no duty to defend Nordson.

## II.

It is established Ohio law that an insurer's duty to defend is broader and distinct from its duty to indemnify. *Ohio Govt. Risk Mgt. Plan v. Harrison* (2007), 115 Ohio St.3d 241, 245-46 (citing *Sechuana-Vacuum Oil Co. v. Continental Caves. Co.* (1945), 144 Ohio St. 382, paragraph one of the syllabus). Furthermore, the insurer must defend the insured when the allegations in the underlying action state a claim that arguably or potentially falls within the policy coverage. *Id*. at 246 (citing *Willoughby Hills v. Cincinnati Ins. Co*. (1984), 9 Ohio St.3d 177, 179). Doubts regarding coverage, if any exist, must be resolved in favor of the insured. *Sherwin-Williams Co. v. Certain Underwriters at Lloyd's London*, 813 F.Supp. 576 (N.D. Ohio 1993). Where provisions of the insurance contract are susceptible to more than one meaning, they will be construed strictly against the insurer and liberally in favor of the insured. *Professional Rental, Inc. v. Shelby Ins. Co.*, 75 Ohio App.3d 365, 371 (1991) (citations omitted). However, an insurer

need not defend its insured when the underlying claims brought against the insured are indisputably outside policy coverage. *Harrison* at 246 (citing *Preferred Risk Ins. Co. v. Gill* (1987), 9 Ohio St.3d 108, 113).

### III.

The procedure for prosecuting and defending complex product liability disputes in French courts differs from typical civil litigation practice in the United States. There, a party may file a formal action on the merits *or* it may petition the court for the appointment of a neutral expert on the subject matter of a dispute–someone who can conduct discovery, establish facts and resolve technical issues requiring the insight of a specialist. This latter proceeding is called an expertise proceeding which is brought under Article 145 of the French Code of Civil Procedure.

In this instance, the French court appointed Mr. Bernard Steib to use the full resources of the court (i.e., to obtain all documents, interview witnesses, and visit Systems Madeiras and other parties) to determine the nature, origin, and extent of the defects described in the summons. (Doc #: 1-3, at 14.) Mr. Steib's "mission" is to determine whether the defects came from non-compliance with contract documents, workmanship, execution of the manufacturing process, storage conditions throughout the supply chain, defective component parts, or something involving end users. (Id.) The court directed him to submit his opinion on the factual and technical issues so as to allow the court to determine the "liabilities incurred and assess if any damages have been suffered." (Id.) Once Mr. Steib submits his written report to the court, the expertise proceeding will conclude. However, the party that instituted the proceeding, Systemes

Moteurs, may use the report as a basis to commence a formal action on the merits against Nordson.

Notably, the judge in a formal action may also appoint a neutral expert on the subject matter of the litigation to, again, conduct discovery, establish facts, resolve technical issues requiring the insight of a specialist, and submit a written opinion on those matters.  In both cases, whether a formal civil action or an expertise proceeding, the expert cannot pass on questions of law and, while the judge may accord deference to the expert's opinion, that opinion is not binding on the court.

According to Nordson, the expertise proceeding is the first and integral step in a continuous litigation process tied directly to a later complaint for damages, similar to the Calderon Process discussed in *Clarendon America Ins. Co. v. StarNet Ins. Co.*, 113 Cal.Rptr.3d 585, 587 (Cal.App.2010), *review granted and opinion superseded*, 242 P.3d 67 (Cal. 2010), *review dismissed*, 248 P.3d 191 (Cal. 2011).  In *Clarendon*, the court addressed whether an insurer was required to defend its insured in connection with the service of a "Calderon Notice" and the subsequent "Calderon Process" under the Calderon Act.  The Calderon Act set forth a dispute resolution procedure for a homeowners' association to satisfy before it could file a complaint in court for construction or design defects.  *Id*. at 588-89.  During the Calderon Process, documents are exchanged, visual inspections and testing is conducted, and a document depository created.  *Id*. at 591.  The Calderon Process concludes with a "facilitated dispute resolution" of the claim.  *Id*. at 589.  In holding that the Calderon Process is a civil proceeding within the definition of suit in the subject policy, the *Clarendon* court explained, "Although the Calderon Process occurs before a complaint is filed and itself does not result in a judgment or

court-ordered payment of money, the Calderon Process is an integral part of construction defect litigation initiated by a [homeowners] association." *Id*. at 586.

Nordson also likens this case to *Professional Rental, Inc. v. Shelby Ins. Co*. (1991), 75 Ohio App.3d 365.  There, it was noted that the CERCLA statutory scheme gives the EPA several legal methods for compelling potentially responsible parties to assume responsibility for hazardous waste cleanup.  Among those methods is when the EPA issues an administrative compliance order making the insured *susceptible* to stiff fines or punitive damages for failure to abide by the terms of the order.  In *Professional Rental*, the court held the "suit" requirement was satisfied when an insured, prior to the filing of a formal lawsuit, was the subject of a regulatory agency's substantial efforts to force the insured to take action or suffer serious consequences if the insured failed to cooperate.  Upon reviewing authority across the country finding on both sides of this issue (see id. at 372, nn. 3 and 4), the Ohio court found it was apparent that the term "suit" was susceptible to more than one meaning; thus, it should be liberally construed in favor of the insured (id.).  The court expressly declined to adopt a bright-line rule linking the obligation to defend CERCLA proceedings to "*judicial* proceedings."  *Id.*

Nordson asserts that the expertise proceeding constitutes a "suit" because it is a civil proceeding created by the French Code of Civil Procedure under the auspices of the French commercial court and the court-appointed judicial expert.  Furthermore, Nordson had no control over the decision of Systemes Moteurs to initiate an expertise proceeding as opposed to a formal action.  And finally, Nordson's challenge to the jurisdiction of the court and the process was rejected by the trial court and affirmed by the appeals court, which held that Nordson must participate in the proceeding because it had not shown that its soldering paste was *not* defective.

-6-

The Insurance Company, on the other hand, likens the expertise proceeding to the one discussed in *Detrex Chem. Indust., Inc. v. Employers Ins. of Wausau*, 681 F.Supp.438 (N.D. Ohio 1988).  In *Detrex*, the California court decided to adopt a bright-line rule in concluding that anything short of filing a judicial complaint (there, an EPA letter informing a company that it might be liable for cleanup costs, penalties and punitive CERCLA damages) did not trigger the duty to defend.

### IV.

Not only is there no Ohio case that analyzes an insurer's duty to defend a French expertise proceeding, there apparently is no case from any other state or federal court on point.  Further, the parties disagree over the consequences of failing to participate in the expertise proceeding, e.g., whether Nordson would be precluded from presenting evidence in a subsequent suit for damages.  (See Doc #: 24, at 11 n.7.)  Accordingly, the Court **DENIES** both summary judgment motions (**Doc ##: 20, 22**).

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster     January 15, 2016*
**Dan Aaron Polster**
**United States District Judge**